11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Alfred Castellon Lopez

Appellant

Vs.                   No.  11-03-00318-CR -- Appeal from Midland County

State
of Texas

Appellee 

 

The jury convicted appellant, Alfred Castellon
Lopez, of delivery of heroin in an amount of 4 grams or more, but less than 200
grams.  Upon making a finding of Atrue@
to  prior felony convictions alleged by
the State for enhancement purposes, the trial court assessed appellant=s punishment at confinement in the
Institutional Division of the Texas Department of Criminal Justice for a term
of 45 years.  Appellant raises seven
issues on appeal attacking the trial court=s
admission of evidence during both the guilt/innocence and punishment phases of
the trial.  We affirm.  

Lieutenant Jose Valenzuela of the Texas Department
of Public Safety (DPS) testified that he purchased heroin from appellant on
August 28, 1999, while working as an undercover narcotics officer.[1]  Appellant was not arrested at the time of the
transaction because Lieutenant Valenzuela was conducting a Abuy/walk@
investigation in hopes of identifying the source of the heroin.  Dennis Hambrick, a criminalist/chemist  with the DPS crime laboratory in Midland,
testified that his analysis of the substance which Lieutenant Valenzuela
purchased from appellant confirmed the presence of heroin.  Hambrick additionally testified that the
substance weighed 6.19 grams.  








Appellant attacks Hambrick=s
qualifications to testify as an expert in his first issue.  He contends that the trial court erred in
overruling his objection that Hambrick=s
testimony did not satisfy the requirements for scientific evidence under  Daubert v. Merrell Dow Pharmaceuticals,
Inc., 509 U.S. 579 (1993), and Kelly v. State, 824 S.W.2d 568
(Tex.Cr.App.1992). The Supreme Court held in Daubert that scientific
expert testimony must be relevant and reliable to be admitted.  In Kelly, the Texas Court of Criminal
Appeals established the following three-part test for determining the
reliability of scientific evidence:  (1)
the underlying scientific theory must be valid; (2) the technique applying the
theory must be valid; and (3) the technique must have been properly applied on
the occasion in question. Kelly v. State, supra at 573; see
TEX.R.EVID. 702.  The burden is upon the
proponent of the evidence to prove by clear and convincing testimony that the
evidence meets that test. Kelly v. State, supra at 572-73. We
will not disturb a trial court=s
decision to admit expert testimony absent an abuse of discretion. Hinojosa
v. State, 4 S.W.3d 240, 251
(Tex.Cr.App.1999). 

Hambrick testified that he has been employed as a
criminalist/chemist with the DPS crime laboratory in Midland for over 13
years.   His duties include analyzing
unknown testing samples that are suspected to contain controlled
substances.  He obtained a bachelor of
science degree in chemistry from Sul Ross State University.  He has also undergone advanced training in
chemistry at Sul Ross and the DPS laboratory in Austin.  

Hambrick performed two tests on the substance
which appellant delivered to Lieutenant Valenzuela.  Hambrick testified that he used these tests
on a daily basis in his work.  Hambrick
described the first test as an ultraviolet light test which served as a
screening test to determine the group of controlled substances which were
present in the testing sample.  Hambrick
testified that this type of test is an accepted screening test at the local,
state, and national levels.  He also
explained how the ultraviolet light used in the test produces a reading based
upon the manner in which the testing sample absorbs the light.  

             The second test
which Hambrick performed was a gas chromatography mass spectrometry.  Hambrick used this test to determine the
particular controlled substance in the testing sample.   He testified that this test was accepted
throughout the United States as a valid scientific method to determine the
substances contained within a testing sample. 
Hambrick stated that this test utilized a process which separates a
mixture of substances into its constituent parts.  The test then determines the substances
contained in the mixture.   Hambrick
determined that the testing sample contained heroin based upon his performance
of this test.








Hambrick entered the data generated by the tests
that he performed on the testing sample on a worksheet.  A secretary then typed a final report from
the worksheet Hambrick prepared.  Both
Hambrick and his supervisor reviewed Hambrick=s
testing results and the final report prior to signing it.

The State elicited testimony from Hambrick which
detailed his specialized training and extensive experience in analyzing
controlled substances.  Hambrick=s testimony addressed the acceptance of
the tests he performed within the scientific community as valid methods for
determining the composition of suspected controlled substances.  Based upon this testimony, the trial court
did not abuse its discretion by denying appellant=s
objection to the reliability of Hambrick=s
testimony.  Appellant=s first issue is overruled.

In his second issue, appellant argues that the
trial court erred in admitting the substance which Hambrick tested and Hambrick=s report containing the test
results.   Appellant contends that these
items were inadmissible because the State did not adequately establish the
chain of custody for the substance.  In
advancing this contention, appellant asserts that the State=s evidence was lacking because it did
not establish the chain of custody beyond a reasonable doubt.  The reasonable doubt standard generally
applies to the process of reviewing the legal sufficiency of all of the
evidence presented, both admissible and inadmissible, to determine whether the
elements of an offense have been logically established.   See TEX. PEN. CODE ANN.' 2.01 (Vernon 2003); Jackson v.
Virginia, 443 U.S. 307 (1979); Hanks v. State, 137 S.W.3d 668, 671
(Tex.Cr.App.2004); Caddell v. State, 123 S.W.3d 722, 726 (Tex.App. -
Houston [14th Dist.] 2003, pet=n
ref=d). 
Absent a statutory requirement otherwise, the reasonable doubt standard
is inapplicable to a determination of the admissibility of a particular item of
evidence.[2]   Accordingly, we disagree with appellant=s assertion that the reasonable doubt
standard governs our consideration of his evidentiary challenge.








We review the trial court=s
decision to admit evidence under an abuse of discretion standard. Weatherred
v. State, 15 S.W.3d 540, 542 (Tex.Cr.App.2000).   If evidence is properly identified, questions
concerning care and custody typically go to the weight, not the admissibility,
of the evidence.  Foster v. State,
101 S.W.3d 490, 498 (Tex.App. - Houston [1st Dist.] 2002, no pet=n). 
Proof of the beginning and the end of the chain of custody will support
admission of the evidence unless there is a showing of tampering or
alteration.  Durrett v. State, 36
S.W.3d 205, 208 (Tex.App. - Houston [14th Dist.] 2001, no pet=n). The chain of custody is established
if an officer testifies that he seized the item of physical evidence, tagged
it, placed an identifying mark on it, placed it in evidence storage, and
retrieved the item for trial. Lagrone v. State, 942 S.W.2d 602, 617
(Tex.Cr.App.), cert. den=d,
522 U.S. 917 (1997).  When evidence is
sent to a laboratory for analysis, the proponent must introduce testimony
showing that the laboratory handled the evidence in the same way to conclusively
establish the chain of custody. See Medellin v. State, 617 S.W.2d 229,
232 (Tex.Cr.App.1981). When the State completes the chain of custody from the
initial collection of the evidence to inside the laboratory, most questions
concerning care and custody, including gaps and minor theoretical breaches, go
to the weight of the evidence, not its admissibility. See Medellin v. State,
supra at 232; Silva v. State, 989 S.W.2d 64, 68 (Tex.App. - San
Antonio 1998, no pet=n).

Lieutenant Valenzuela testified that he
transported the substance which he purchased from appellant to the DPS office
after the transaction occurred on August 28, 1999.  After weighing the substance, he placed it in
a sealed envelope.  He also labeled the
envelope with a unique case number and placed his initials on the
envelope.  He then placed the envelope in
his evidence closet.  Lieutenant
Valenzuela testified that the only persons with access to his evidence closet
were himself and his supervisor, Lieutenant Robert E. Ralls.  Lieutenant Valenzuela took the evidence to
the DPS laboratory in Midland on August 30, 1999.  He testified that the envelope containing the
evidence remained  sealed in the same
manner in which he placed it into his evidence closet.  








Hambrick testified that the laboratory received
the testing sample on August 30, 1999, from Lieutenant Valenzuela and that the
envelope containing the sample remained sealed upon its receipt.  Hambrick initially testified that he received
the testing sample from Lieutenant Valenzuela. 
Hambrick indicated on cross-examination that Pat Elkin, an evidence
technician, received the testing sample from Lieutenant Valenzuela.  He further testified that Elkin placed the
testing sample into the laboratory=s
vault.  The vault was accessible only to
Hambrick, his supervisor, and the evidence technician.  Hambrick removed the sample  from the vault for testing on September 13,
1999.  He stated that the testing sample
was in a sealed condition when he removed it from the vault for testing and
that it did not appear to have been opened. 
The sample remained at the laboratory until Lieutenant Valenzuela picked
it up for trial.

Appellant contends that the State failed to
sufficiently establish the chain of custody because Elkin did not testify about
her role in processing the evidence upon receiving it from Lieutenant
Valenzuela.  We disagree.   The testimony from Lieutenant Valenzuela and
Hambrick established the beginning and the end of the custody chain.  Furthermore, Hambrick testified that the
envelope containing the evidence was sealed at the time he retrieved it for
testing.  The trial court did not abuse
its discretion in admitting the testing sample and the report generated from
the testing.  Appellant=s complaints about gaps in the custody
chain are matters pertaining to the weight, rather than the admissibility, of
the evidence.   Appellant=s second issue is overruled.

Appellant asserts in his third issue that the
trial court erred in failing to include a definition of reasonable doubt in the
court=s charge
to the jury.  In Geesa v. State,  820 S.W.2d 154 (Tex.Cr. App.1991), the Texas
Court of Criminal Appeals adopted a definitional instruction for Areasonable doubt@
and required that the instruction be submitted to the jury in all criminal
cases.  See Colbert v. State, 108
S.W.3d 316, 318 (Tex.Cr.App.2003).  The
court subsequently overruled Geesa=s
requirement for the trial court to instruct the jury on the definition of
reasonable doubt in Paulson v. State, 28 S.W.3d 570, 573
(Tex.Cr.App.2000).  The court concluded
in Paulson that the Geesa definition was confusing and logically
flawed.   Paulson v. State, supra at
573.  

Appellant acknowledges that the holding in Paulson
is the controlling authority with respect to his contention.  He urges that this court decline to follow Paulson
because it purportedly places the exercise of a constitutionally-mandated
protection in the hands of the prosecutor.[3]   As noted in Paulson, the United
States Supreme Court determined in Victor v. Nebraska, 511 U.S. 1, 5
(1994), that the United States Constitution does not require trial courts to
instruct the jury regarding the meaning of reasonable doubt as a matter of
course.  Paulson v. State, supra at
573.  Accordingly, we will follow Paulson.  Appellant=s
third issue is overruled.








Appellant=s
fourth issue challenges the trial court=s
admission of two Apen
packets@
containing records of two prior felony convictions which the State alleged for
enhancement purposes.  At the outset of
the punishment phase, the State offered the pen packets into evidence as
self-authenticated documents.  The first
pen packet, State=s Exhibit
No. 6, contained documents pertaining to a 1994 conviction for tampering with
governmental records arising from Cause No. B-23,326 in the 161st District
Court of Ector County.  The second pen
packet, State=s Exhibit
No. 7, contained documents pertaining to a 1989 conviction for third degree
theft of property arising from Cause No. W-CRB-15,404 in the 238th District
Court of Midland County.  Both of the pen
packets contained photographs of the individual convicted for the respective
offenses.  The pen packets were accompanied
by documents certifying them as official records of the Texas Department of
Criminal Justice - Institutional Division.

Appellant objected to the admission of State=s Exhibits Nos. 6 and 7 on the basis
that the State failed to establish that appellant was the same individual
convicted for the offenses set out in the exhibits.  Appellant additionally objected to the
admission of State=s Exhibit
No. 7 on the ground that it did not contain a copy of an indictment for the
offense.  Appellant argues on appeal that
State=s
Exhibits Nos. 6 and 7 were inadmissible without accompanying testimony
establishing that he was the same person that committed the offenses.  Appellant further complains about the lack of
testimony establishing that the photographs contained within the pen packets
were fair and accurate depictions of appellant. 
Lastly, appellant contends that the State did not establish that the
records were admissible as Abusiness
records.@  See TEX.R.EVID. 803(6).  








As noted previously, a court may admit evidence of
prior criminal convictions during the punishment phase of a trial.  Article 37.07, section 3(a)(1). Certified
copies of a judgment and sentence are admissible as self-authenticated public
records. See TEX.R.EVID. 901(b)(7) and 902(1) & (4). However, these
documents alone are insufficient to prove a prior conviction.  Beck v. State, 719 S.W.2d 205, 210
(Tex.Cr.App.1986).  The State must
present independent evidence that the defendant is the same person as named in
the previous conviction.  Beck v.
State, supra at 210.  Photographs
made available to the fact finder for comparison with the accused can provide
the independent evidence necessary to prove the accused was previously
convicted.  Williams v. State, 946
S.W.2d 886, 895 (Tex.App. - Waco 1997, no pet=n).  In this case, the pen packets contained
photographs of the person previously convicted. 
The fact finder could compare appellant=s
in-court appearance with the photographs. 
Therefore, the trial court did not abuse its discretion in admitting the
pen packets without additional evidence. 


We also reject appellant=s
contention that State=s
Exhibit No. 7 was improperly admitted because it did not contain an
indictment.  The judgment and sentence in
State=s Exhibit
No. 7 indicate that the defendant was charged by information rather than by
indictment.  See TEX. CODE CRIM.
PRO. ANN. art. 1.141 (Vernon 2005)(permitting an accused to waive being charged
by an indictment).  State=s Exhibit No. 7 contains a copy of the
information which served as the charging instrument.  Moreover, State=s
Exhibit No. 7 contains a copy of the judgment and sentence for the prior
conviction.  These documents are the
critical documents which make a pen packet admissible as evidence of a final
conviction.  See Langston v. State, 776
S.W.2d 586, 587-88 (Tex.Cr.App.1989)

Lastly, State=s
Exhibits Nos. 6 and 7 were not dependent on the business records exception for
their admissibility.  See Rule
803(6).  The public records exception of
the hearsay rule applied to the documents. 
See TEX.R.EVID. 803(8). 
Furthermore, the certification of the documents as copies of official
public records made them admissible without additional testimony.  See Rule 902(4).  Appellant=s
fourth issue is overruled.








Appellant=s
fifth issue addresses the admission of State=s
Exhibits Nos. 8, 9, and 10 during the punishment phase.  State=s
Exhibit No. 8 consisted of a pen packet detailing a 1981 conviction for
attempted aggravated kidnapping with intent to inflict body injury arising out
of Cause No. CRB-8498 in the 142nd District Court of Midland County.  State=s
Exhibit No. 8 does not contain photographs of the person convicted.  However, it contains a document
identifying  the person convicted as AAlfredo Castillon Lopez@ with a date and place of birth of
February 26, 1953, in Martin County. 
State=s Exhibit
No. 8 also contains documents ordering the commitment of  AAlfredo
Castillon Lopez@ for a
1978 conviction for the offense of aggravated assault arising from Cause No.
6,957 in the 142nd District Court of Midland County.  The order of commitment was accompanied by an
order revoking probation in Cause No. 6,957.  
State=s Exhibit
No. 8 indicates that AAlfredo
Castillon Lopez@ was
confined to serve the sentence imposed in Cause No. 6,957 at the same time as
the sentence imposed in Cause No. CRB-8498.

State=s
Exhibit No. 9 consists of an arrest record for AAlfredo
Castillon Lopez@ arising
from an arrest occurring on October 23, 1978.[4]    State=s
Exhibit No. 9 lists the date and place of birth for  AAlfredo
Castillon Lopez@ as
February 26, 1953, in Stanton.[5]  State=s
Exhibit No. 10 consisted of two photographs taken of an individual.   Margaret Dutchover, the chief custodian of
records for the Midland County Sheriff=s
Office, described State=s
Exhibit No. 9 as a booking sheet prepared in connection with the arrest of  AAlfredo
Castillon Lopez@ on
October 23, 1978.  She described State=s Exhibit No. 10 as booking photographs
taken of him at the time of his arrest on October 23, 1978.            The
State offered State=s
Exhibits Nos. 9 and 10 in an effort to provide information identifying
appellant as the person ordered to be confined in Exhibit No. 8.  Specifically, the State relies on the same
date and place of birth being listed in State=s
Exhibits Nos. 8 and 9.  The State relies
upon State=s Exhibit
No. 10 to identify appellant as the same person that is the subject of  State=s
Exhibits Nos. 8 and 9.  

Appellant asserts that the trial court erred in
admitting State=s Exhibit
No. 8 because the State failed to prove that it was a business record.  As was the case with State=s Exhibits Nos. 6 and 7, State=s Exhibit No. 8 was a pen packet
accompanied by a document certifying it as an official record of the Texas
Department of Criminal Justice - Institutional Division.  Accordingly, State=s
Exhibit No. 8 was not dependent on the business records exception for its
admissibility.  See Rule
803(6).  The public records exception of
the hearsay rule applied to the documents. 
See Rule 803(8). 
Fur-thermore, the certification of the documents as copies of official
public records made them admissible without additional testimony.  See Rule 902(4). 








The State sought the admission of State=s Exhibits Nos. 9 and 10 on the basis
that they  constituted business
records.  Appellant contends that the
State=s
evidence pertaining to the business records exception was deficient.  We disagree. 
Dutchover testified that the arrest record and booking photograph were
documents required to be kept in the normal course of business.  She further testified that they were prepared
at the time the individual was booked into jail by someone who had direct
knowledge of the data contained therein. 
Based upon Dutchover=s
testimony, the trial court did not abuse its discretion in determining that the
State satisfied the requirements of the business records exception of the
hearsay rule.  See Rule
803(6).  

Appellant also contends that the State failed to
establish the authenticity of the photographs contained in State=s Exhibit No. 10.  Dutchover testified that the photographs
accurately depicted the person arrested based upon her comparison of the
photographs to the negatives in her file.[6]
Appellant contends that Dutchover lacked sufficient expertise to offer her lay
opinion regarding this comparison.  We
disagree with this assertion.  A
photograph may be authenticated by the testimony of any witness who has
personal knowledge that the particular item accurately represents the scene or
event it purports to portray.  Drone
v. State, 906 S.W.2d 608, 611 (Tex.App. - Austin 1995, pet=n ref=d).  Additionally, Dutchover=s testimony was admissible as opinion
evidence from a lay witness under TEX.R.EVID. 701 because it was rationally
based on the perception of the witness and it was helpful to the determination
of a fact in issue.  

Although the evidence is attenuated, State=s Exhibits Nos. 8, 9, and 10 provided
the trial court with information with which it could have identified appellant
as the person confined for the offenses set out in State=s
Exhibit No. 8.  The trial court did not
abuse its discretion in admitting these matters into evidence.  Appellant=s
fifth issue is overruled.

Appellant=s
sixth issue addresses the admission of testimony from Officer Seth Herman of
the Midland Police Department.  Herman
testified that he purchased less than a gram of heroin from appellant on August
30, 1999, in a separate transaction. 
Appellant objected to the admission of this testimony on the grounds
that it was not relevant and that its admission violated TEX.R.EVID. 403.      Article
37.07, section 3(a) provides that, during the punishment phase, the State may
offer evidence:








[A]s
to any matter the court deems relevant to sentencing, including but not limited
to the prior criminal record of the defendant, his general reputation, his
character, an opinion regarding his character, the circumstances of the offense
for which he is being tried, and, notwithstanding Rules 404 and 405, Texas
Rules of Evidence, any other evidence of an extraneous crime or bad act that is
shown beyond a reasonable doubt by evidence to have been committed by the
defendant or for which he could be held criminally responsible, regardless of
whether he has previously been charged with or finally convicted of the crime
or act.   

 

The admissibility of evidence at the punishment phase of a
noncapital felony offense is a function of policy rather than relevancy. See
Rogers v. State, 991 S.W.2d 263, 265 (Tex.Cr.App.1999); Miller-El v.
State, 782 S.W.2d 892, 895 (Tex.Cr.App.1990). Accordingly, the Texas Court
of Criminal Appeals has observed that, in determining what is relevant to
sentencing, the important question is Awhat
is helpful to the jury in determining the appropriate sentence for a particular
defendant in a particular case.@
Rogers v. State, supra at 265.  

The express language of Article 37.07, section
3(a)(1) establishes that the conduct described by Officer Herman was relevant
to the assessment of appellant=s
punishment.  Punishment phase evidence
that the trial court deems relevant is still subject to a Rule 403
analysis.  See Rogers v. State, supra at
266-67. Under Rule 403, even relevant evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair prejudice, confusion
of issues, misleading the jury, considerations of undue delay, or needless
presentation of cumulative evidence.  As
noted in Rogers, relevant evidence is only inadmissible under Rule 403
to the extent that its degree of  unfair prejudice substantially outweighs
the probative value of the evidence.  Rogers
v. State, supra at 266 (emphasis in original).  AUnfair
prejudice@ refers
to Aan undue tendency to suggest [a]
decision on an improper basis.@  Rogers v. State, supra at 266.  Given the similarity of the conduct between
the charged offense and that described by Officer Herman, we do not find that
the trial court abused its discretion in admitting the evidence.  Appellant=s
sixth issue is overruled.

Appellant=s
seventh issue addresses the admission of evidence regarding the testing of the
substance which Officer Herman purchased from him.  Appellant presents numerous complaints in his
seventh issue.  He challenges the
qualifications of  the chemist who
testified about the testing of the substance. 
He also challenges the chain of custody evidence for the testing
sample.  Appellant also attacks the
testifying chemist=s
reliance on another chemist=s
work.  Finally, he argues that the State
failed to establish that the report generated from the test constituted a
business record.  








Officer Herman testified that, after purchasing
the substance from appellant, he returned to the Midland Police Department
whereupon he weighed the substance, sealed it in an evidence bag, labeled it
with a unique case number, and secured it in a narcotics vault.  Officer Herman subsequently transported the evidence
to the evidence room of the Midland Police Department where he logged it into
evidence.

Bob Lee Wheeler, the supervisor of the DPS crime
laboratory in Midland, testified about the testing performed on the substance
which Officer Herman purchased from appellant. 
In addition to serving as the supervisor of the laboratory, Wheeler is
both a criminalist and chemist.  He
possesses a bachelor=s
of science degree in chemistry from Texas A&I University in Kingsville and
a Ph.D. in analytical chemistry from the University of Texas in Austin.  Wheeler testified that he has been trained in
the analysis of suspected controlled substances and that, as of the time of
trial, he had nine years of experience with the DPS. 

Wheeler testified that a testing sample brought to
the DPS laboratory for testing is assigned a unique case number.  He testified that the envelope containing the
substance which Officer Herman purchased from appellant was sealed at the time
it was delivered to the laboratory for testing. 
Wheeler testified that a preliminary color test and two instrument tests
were performed on the testing sample which included UV absorption spectroscopy
and gas chromatography mass spectroscopy. Wheeler explained the manner in which
these tests are performed and the scientific principles upon which the tests
are based.  Wheeler testified that
Hambrick performed these tests.  Wheeler=s review of Hambrick=s work did not reveal any abnormalities
in the results. 

Wheeler further testified that Hambrick was
required to prepare a report of his testing results. The laboratory maintained
the report in the normal course of business. 
Wheeler testified that the report contains data provided by the person
who actually conducted the analysis of the testing sample and that the report
was prepared at or near the time of the testing.  








We have previously outlined the applicable law
pertaining to the challenges raised by appellant in his seventh issue.  Given Wheeler=s
advanced training and experience, the trial court did not abuse its discretion
in determining that he possessed sufficient qualifications for offering
testimony about the analysis of controlled substances.  Furthermore, the testimony of Officer Herman
and Wheeler sufficiently established the beginning and the end of the chain of
custody for the sample which was tested. 
As an expert, Wheeler was permitted to base his testimony on Hambrick=s analysis of the testing sample.  See Ingram v. State, 124 S.W.3d 672,
677 (Tex.App. - Eastland 2003, no pet=n).  Finally, Wheeler=s
testimony addressed the elements necessary for establishing the  admissibility of the report under the
business records exception.  Appellant=s seventh issue is overruled.

The judgment of the trial court is affirmed.

 

W. G. ARNOT, III

CHIEF JUSTICE

 

June 16, 2005

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of:  Arnot, C.J., and

Wright,
J., and McCall, J.











     [1]Appellant
does not attack the sufficiency of the evidence supporting his conviction.





     [2]Under
TEX. CODE CRIM. PRO. ANN. art. 37.07, ' 3(a)
(Vernon Pamph. Supp. 2004 - 2005), extraneous crimes may be admitted during the
punishment phase of the trial if they are shown to have been committed beyond a
reasonable doubt by the evidence. 
Accordingly, the reasonable doubt standard is relevant to a
determination of the admissibility of evidence pertaining to extraneous crimes.  However, 
the review of a  trial court=s ruling under Article 37.07, section 3(a) lacks many
of the procedural safeguards which ordinarily apply to a review of the
sufficiency of the evidence under the reasonable doubt standard.  See Malpica v. State, 108 S.W.3d 374,
378-79 (Tex.App. - Tyler 2003, no pet=n). 





     [3]Appellant
bases his argument on a statement in Paulson wherein the court stated
that the inclusion of a definition of reasonable doubt would not constitute
reversible error if both the State and the accused agreed to its
inclusion.  Paulson v. State, supra at
573.





     [4]It
appears that State=s Exhibit No. 9 constitutes the record for the arrest
of AAlfredo Castillon Lopez@ in
connection with the offense for which he was convicted in Cause No. 6,957.





     [5]The
trial court took judicial notice that Stanton is located in Martin County.





     [6]No
evidence was offered regarding the source of State=s Exhibit No. 10. 
The photographs clearly depict a male either wearing or holding a sign
with the following identifying information: 
ASheriff=s Dept. Midland Texas, 12446, [10/24/78].@ The corresponding arrest record (State=s Exhibit No. 9) lists an AID Number@ of A12,446.@