Opinion filed June 14, 2007

















 
 
  
 
 







 
 
  
 
 




Opinion filed June 14, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00276-CR 

                                                    __________

 

                          CAMERON SHEROD MCDANIEL, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 

______________________________________________________________________________

 

                                             On
Appeal from the 203rd District Court

 

                                                            Dallas County, Texas

 

                                               Trial
Court Cause No. F-0351230-MP

______________________________________________________________________________

 

                                                                   O
P I N I O N

 

The jury convicted Cameron Sherod McDaniel of
possession with intent to deliver cocaine in an amount of four grams or more
but less than 200 grams.  Appellant pleaded
true to an enhancement paragraph alleging a prior felony conviction, and the
court found that enhancement paragraph to be true.  The trial court assessed punishment at
thirty-five years confinement.  We
affirm.

In three points of error, appellant argues that
the evidence is both legally and factually insufficient to support his
conviction and that the trial court erred in denying his motion to suppress. 








On the evening of May 4, 2003, Officer Lorne
Ahrens, Officer Starr, and Officer Jason Christopher Jarc were on patrol in
southeast Dallas.  Officer Starr knew that people were selling
drugs at a vacant house at 2224
 Cooper Street
. 
Around 9:40 p.m., the officers hid in some bushes behind the house.  Over a twenty-minute period, the officers
observed eight individuals approach the back window and then leave in less than
one minute.  Officer Jarc testified that,
in his years of experience as a police officer, he had witnessed many drug
transactions and that what he and the other officers observed that evening was
consistent with drug activity.

After seeing the eight people come and go from the
house, the officers approached the next buyer at the window.  They asked the buyer to get down on the
ground, and they waited at the window until the person in the house, appellant,
approached.  When appellant got to the
window, the officers yelled, APolice,
Police!@  Appellant ran toward the front of the
house.  The officers called for backup
officers, who were waiting around the corner. 
Officer Jarc stayed at the back of the house, and Officer Ahrens and
Officer Starr went to the front of the house with the backup officers.  Appellant ran to the back of the house with a
pistol cradled in his right hand. 
Officer Jarc shined a flashlight on appellant and yelled, APolice.@  Appellant slammed the back door shut.  The two officers tried to push the door open.
Appellant let go of the door and ran back through the house.  The officers entered the house, and Officer
Jarc picked up the gun that appellant had been holding in his hand before.  The gun was lying on the ground near the
door.  It was later determined that the
gun, a .38 caliber pistol, was loaded with five rounds of ammunition.[1]

Officer Ahrens continued running after appellant
and caught up with him near the front of the house.  Officer Jarc was following Officer
Ahrens.  Officer Jarc saw appellant make
a motion with his arm and then saw a bag fly; the contents of that baggie was
later determined to be crack cocaine. 
Appellant and the other officers physically struggled until additional
officers came in to subdue appellant and arrest him.  The officers searched the house and found
that the only furniture in the house was a couch and a table.  An SKS assault rifle was found near the front
door.  The officers retrieved a small
baggie of marihuana and $1,057 in cash from appellant=s
person.  The officers found three other
individuals in the house, and they were all arrested.








Other bags of both crack cocaine and marihuana
were found on the table, but appellant was not charged with possession of those
drugs.  The bags came in three different
colors B clear,
green, and yellow.  The green bags
contained the smallest amount of crack cocaine being sold at that location, the
clear bags contained the next level of amount, and the yellow bags contained
even a larger amount.  Officer Barry W.
Ragsdale, an officer with the Dallas Police Department for over fifteen years,
with ten of those years in the narcotics division, testified that it was not
uncommon to find guns inside of drug houses because they were used by dealers
for both protection and intimidation against other drug dealers and law enforcement.  He further testified that it was common for
drug houses to be virtually vacant and that the different size crack cocaine
rocks separated into the different colored bags indicated that appellant had
gone through a tedious process to divide his product for three different price
levels.  

Officer Ragsdale estimated that the thirty-two
grams of cocaine seized from appellant had a street value of around
$3,200.  Officer Ragsdale testified that
based on his experience and given the evidence and circumstances at the house B the amount of drugs and money found in
appellant=s
possession, the way the drugs were packaged, the presence of firearms, the fact
that appellant was in a vacant house, and the numerous individuals walking up
to the back of the house for about one minute before leaving B appellant possessed the drugs with
intent to deliver them. 

Appellant testified at trial that, on the day in question,
he had gone to the house on Cooper
 Street to buy marihuana from his friend, Andre
Holmes.  Appellant testified that he
bought two sacks of marihuana from Holmes and that they then smoked marihuana
together in the front of the house on the couch.  Appellant testified that people were coming to
the back of the house to buy drugs,  that
he did not sell any himself, and that the Cooper Street house was not his
house.  He further stated that, before
the evening of his arrest, he had never known about or been to that
location.  Appellant testified that,
fifteen or twenty minutes after he had been sitting with Holmes, they heard a Aboom, boom@
sound at the front door and then kicking sounds.  Appellant testified that he ran to the back
of the house and someone was kicking on that door.  Several people in the house held the door
shut for a short time. Appellant testified that he was Ablanking
out@ and that, when he looked around,
everyone was gone.  Appellant then ran
from the door, and Officer Jarc came in, caught up with him, grabbed him, hit
him on the head, and brought appellant to the ground.








Appellant testified that he did not have a gun,
that he did not throw any dope, and that he did not have a thousand dollars in
his pocket.  Appellant further testified
that he was convicted twice for possession of crack cocaine with intent to
deliver.  One year before the arrest in
this case, appellant had been released from the penitentiary for a manslaughter
conviction.  Appellant testified that he
should have been convicted of a lesser charge since he was only there to buy
marihuana.

The State called Holmes as a rebuttal
witness.  Holmes testified that appellant
had told him to come to the new house that appellant had just moved into on Cooper Street
.  Holmes testified that he was visiting
appellant when the police showed up. 
When the police came in the house, Holmes followed their commands to get
down.  He heard sounds as the officers
tried to detain appellant.  Holmes
testified that, when the police asked who the drugs belonged to, appellant
said, AIt is
mine, it=s mine.@ 
Holmes testified that, contrary to appellant=s
testimony, he did not attempt to flee through the back door or to keep the
police from coming in the back door.

Appellant=s
wife testified that appellant had lived with her on Cedar Run Drive and, prior to that, with
his mother on a street called Bonnie View. 
Neither address was the Cooper
 Street location. 
Further, on the Dallas County Jail book-in sheet, State=s Exhibit No. 10, appellant listed his
address on Bonnie View.

In his first point, appellant argues that Officer
Jarc violated his Fourth Amendment right against unreasonable search and
seizures because the search was made without a warrant or probable cause.  The State responds that appellant lacked
standing because there is no evidence that he owned the house in which the
drugs were found.








A trial court=s
denial of a motion to suppress is reviewed for an abuse of discretion.  Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App.
2002).  In reviewing a trial court=s ruling on a motion to suppress,
appellate courts must give great deference to the trial court=s findings of historical facts as long
as the record supports the findings. Torres v. State, 182 S.W.3d 899,
902 (Tex.
Crim. App. 2005); Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App.
1997).  Because the trial court is the
exclusive fact-finder, the appellate court reviews evidence adduced at the
suppression hearing in the light most favorable to the trial court=s ruling. Carmouche v. State, 10
S.W.3d 323, 327 (Tex.
Crim. App. 2000). We also give deference to the trial court=s rulings on mixed questions of law and
fact when those rulings turn on an evaluation of credibility and demeanor. Guzman,
955 S.W.2d at 89. Where such rulings do not turn on an evaluation of
credibility and demeanor, we review the trial court=s
actions de novo. Id.;
Davila v. State, 4 S.W.3d 844 (Tex. App.CEastland
1999, no pet.).

When the trial court does not make explicit
findings of fact, we review the evidence in the light most favorable to the
trial court=s ruling
and assume that the trial court made findings that are supported by the record
and that buttress its conclusion.  See
Torres, 182 S.W.3d at 902; Carmouche, 10 S.W.3d at 327-28. We are
obligated to uphold the trial court=s
ruling on appellant=s motion
to suppress if that ruling was supported by the record and was correct under
any theory of law applicable to the case. State v. Ross, 32 S.W.3d 853,
856 (Tex.
Crim. App. 2000).

We must first determine whether appellant has
standing to contest the search. An accused has standing to contest a search
under the Fourth Amendment only if he has a legitimate expectation of privacy
in the place searched. Rakas v. Illinois, 439 U.S. 128 (1978); Granados
v. State, 85 S.W.3d 217, 222-23 (Tex. Crim. App. 2002).  The defendant bears the burden of
establishing that he had a subjective expectation of privacy in the place
searched that society recognizes as reasonable. Granados, 85 S.W.3d at
223. Several factors are relevant to this latter determination of whether a
given claim of privacy is objectively reasonable: (1) whether the accused had a
property or possessory interest in the place invaded; (2) whether he was
legitimately in the place invaded; (3) whether he had complete dominion or
control and the right to exclude others; (4) whether, prior to the intrusion,
he took normal precautions customarily taken by those seeking privacy; (5)
whether he put the place to some private use; and (6) whether his claim of
privacy was consistent with historical notions of privacy. Id. This list
of factors is non-exhaustive, and no one factor alone is dispositive of a
legitimate expectation of privacy. Id.

Here, appellant testified that he did not live at
the Cooper Street house and that he went there to buy marihuana.  Although Holmes testified that appellant told
him that he had moved there, there was no other evidence presented to show that
the house was appellant=s
residence. Appellant=s
address on the book-in sheet was consistent with his wife=s testimony that he lived with her and
that he had lived with his mother previous to that.  This testimony undermined any assertion that
appellant had any property or possessory interest in the Cooper Street house and,
likewise, that appellant had any right to exercise dominion and could exclude
others. 








Further, the circumstances at the time the police
arrived indicate that appellant was not using the location as his personal
residence.  The lack of furniture and the
frequent drug transactions indicate that appellant and the other individuals
were using the residence for illegal drug activity.  

Appellant=s
use of the residence fails to meet the Granados factors.  Accordingly, he lacks standing to assert a
Fourth Amendment claim in this case.  See
Edwards v. State, 850 S.W.2d 731, 735 (Tex. App.CEl
Paso 1993, no pet.) (holding that, under the facts presented, defendant lacked
standing to challenge alleged unreasonable search of house in which he did not
live); Gipson v. State, Nos. 05-01-00770-CR, 05-01-00771-CR,
05-01-00772-CR, and 05-01-00773-CR, 2003 WL 21053918, at *2 (Tex. App.CDallas May 12, 2003, no pet.) (not
designated for publication) (holding defendant lacked standing when there was
no evidence in the record that he had a property or possessory interest in, or
unrestricted access to the residence; no evidence that defendant had dominion
or control over the residence or the right to exclude others; and no evidence
that defendant had stayed overnight or intended to stay overnight).  We overrule this point.       

To determine if the evidence is legally
sufficient, we must review all of the evidence in the light most favorable to
the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307
(1979); Jackson v. State, 17 S.W.3d 664 (Tex. Crim. App. 2000). To
determine if the evidence is factually sufficient, the appellate court reviews
all of the evidence in a neutral light.  Watson
v. State, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. App. 2006) (overruling in
part Zuniga v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson
v. State, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain v. State,
958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). 
Then, the reviewing court determines whether the evidence supporting the
verdict is so weak that the verdict is clearly wrong and manifestly unjust or
whether the verdict is against the great weight and preponderance of the
conflicting evidence.  Watson, 204
S.W.3d at 414-15, 417; Johnson, 23 S.W.3d at 10-11.  The jury, as the finder of fact, is the sole
judge of the weight and credibility of the witnesses=
testimony.  Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon 2007), art.
38.04 (Vernon 1979).








 The Alinks@
rule is not an independent test for legal sufficiency but merely a shorthand
catchphrase for the myriad variety of circumstantial evidence that may
establish knowing Apossession@ or Acontrol,
management, or care@ of
contraband.  Evans v. State, 202
S.W.3d 158, 161-62 n.9 (Tex. Crim. App. 2006). 
A non-exclusive list of factors that may circumstantially establish the
legal sufficiency of the evidence to prove a knowing possession include the
following:  (1) the defendant=s presence when a search was conducted;
(2) whether the contraband was in plain view; (3) the defendant=s proximity to and the accessibility of
the contraband; (4) whether the defendant was under the influence of narcotics
when arrested; (5) whether the defendant possessed other contraband or
narcotics when arrested; (6) whether the defendant made incriminating
statements when arrested; (7) whether the defendant attempted to flee; (8)
whether the defendant made furtive gestures; (9) whether there was an odor of
contraband; (10) whether other contraband or drug paraphernalia was present;
(11) whether the defendant owned or had the right to possess the place where
the contraband was found; (12) whether the place where the contraband was found
was enclosed; (13) whether the defendant was found with a large amount of cash;
and (14) whether the conduct of the defendant indicated a consciousness of
guilt.  Id. at 162 n.12.

Appellant was arrested in a vacant house, not his
residence, where numerous transactions for the sale of crack cocaine had taken
place under the surveillance of police officers.  There were firearms in the house. The police
found a large amount of money on appellant. The police found meticulously
packaged drugs on the table next to where he was arrested.  Appellant does not attack any proof regarding
an element of the offense; he attacks the credibility of Officer Jarc=s testimony. Appellant questions
Officer Jarc=s ability
to see whether appellant had thrown the contraband.  Both Officer Jarc and Officer Ahrens
testified that appellant threw a bag of cocaine while running from the
officers.  Appellant denies any
connection to the cocaine.  The jury
believed the testimony of Officer Jarc, and his testimony supports appellant=s conviction.  Further, there was corroborating testimony
from Officer Ahrens; either officer=s
testimony was legally sufficient to support the jury=s
verdict.  See Mason v. State, 99
S.W.3d 652, 657 (Tex. App.CEastland
2003, pet. ref=d); Terrell
v. State, 949 S.W.2d 49, 51 (Tex. App.CTexarkana
1997, no pet.); Nelms v. State, 834 S.W.2d 110 (Tex. App. CHouston [1st Dist.] 1992, pet. ref=d). 
After reviewing the evidence in the light most favorable to the jury=s verdict, we hold that it was legally
sufficient to support the conviction.  








Lastly, appellant argues that the evidence is
factually insufficient to support a conviction because the evidence presented
at trial did not show appellant=s
intent to deliver cocaine.  Intent to
deliver may be proved by circumstantial evidence, including evidence
surrounding its possession. Ingram v. State, 124 S.W.3d 672, 676 (Tex.
App.CEastland
2003, no pet.). Inferences can be made from the conduct of the defendant as
well as the amount of the controlled substance possessed and the manner in
which it was possessed.  Id.; Rhodes
v. State, 913 S.W.2d 242 (Tex. App.CFort
Worth 1995), aff=d,
945 S.W.2d 115 (Tex. Crim. App. 1997); Puente v. State, 888 S.W.2d 521
(Tex. App.CSan
Antonio 1994, no pet.). Courts have considered several factors in determining
intent, including the following: (1) the nature of the location where the
defendant was arrested; (2) the quantity of drugs the defendant possessed; (3)
the manner of packaging of the drugs; (4) the presence or absence of drug
paraphernalia (for use or sale); (5) whether the defendant possessed a large
amount of cash in addition to the drugs; and (6) the defendant=s status as a drug user.  Jordan v. State, 139 S.W.3d 723, 726 (Tex.
App.CFort
Worth 2004, no pet.). Intent is a question of fact and must be determined by
the trier of fact. Ingram, 124 S.W.3d at 676.

Officer Jarc testified that, while observing the
vacant house on Cooper Street, he witnessed several drug transactions taking
place at the back of the house.  When
Officer Jarc approached the house and shined the flashlight inside, the person
he saw was appellant.  Once inside,
Officer Jarc saw appellant throw a baggie of crack cocaine while running from
the officers, and Officer Jarc identified the same baggie in court.  Officer Ahrens testified that he saw
appellant throw the baggie.  Officer
Ragsdale testified that the circumstances at the house indicated it was a drug
house and, in fact, that the drug being packaged there was crack cocaine.   See Guy v. State, 160 S.W.3d
606, 611 (Tex. App.CFort
Worth 2005, pet. ref=d)
(evidence factually sufficient to prove defendant possessed cocaine with intent
to deliver where police officer observed defendant dropping baggie of cocaine
out of his hand and the officer identified the baggie in court as the same
baggie he saw on the day in question; the amount of cocaine recovered
constituted a dealer amount proving defendant=s
intent to deliver).  The jury was
responsible for resolving any conflicts in the testimony and, as such, was the
sole judge of the weight and credibility of the evidence. Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). 








After a review of the entire record in a neutral
light, we hold that the evidence supporting the verdict is not so weak that the
verdict is clearly wrong and manifestly unjust and that the verdict is not
against the great weight and preponderance of the conflicting evidence.  The evidence is legally and factually sufficient
to support the judgment.  Appellant=s second and third points of error are
overruled.  

The judgment is affirmed.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

June 14, 2007

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.











[1]ARound@ refers to a unit of ammunition or one bullet.  See Merriam‑Webster=s Collegiate Dictionary 1085 (11th ed. 2003).