**Deven Ray INGRAM, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–02–00168–CR.**

Court of Appeals of Texas, Eastland.

Oct. 2, 2003.

John S. Young, Law Office of John S. Young, Sweetwater, for appellant.

James Eidson, District Attorney, Patricia Dyer, Assistant, Appellate Section Criminal Dist. Atty's Office, Abilene, for appellee.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

JIM R. WRIGHT, Justice.

Deven Ray Ingram was charged with possession, with the intent to deliver, of more than 400 grams of methamphetamine. He was also charged in the same indictment with possession of more than 400 grams of methamphetamine. Appellant pleaded not guilty and proceeded to a jury trial. The jury convicted appellant of the first count, possession with the intent to deliver methamphetamine. The trial court assessed punishment at 25 years confinement and a $5,000 fine. We affirm.

Trooper Anthony Bennett testified that on January 26, 2001, he observed appellant driving without a license plate light. When Trooper Bennett initiated the stop of appellant's vehicle, appellant pulled into a driveway of a mobile home, parked, and got out of the vehicle. He was unable to produce a driver's license. Trooper Bennett requested that appellant verbally identify himself so that a computer check could be run to see if he had a valid driver's license. Appellant verbally identified himself with a false name and date of

birth. In attempting to identify appellant, Trooper Bennett inquired if the mobile home where they stopped belonged to appellant. Appellant answered that it did. However, no one in the mobile home could identify appellant.

After being unable to identify appellant and being unable to proceed with enforcement action without positive identification, Trooper Bennett placed appellant under arrest and conducted a search of appellant's vehicle. During the search, Trooper Bennett found a glove which contained a "baggie of marijuana," and he also found a large "green Tupperware tub" in the front seat of appellant's vehicle. Trooper Bennett testified that there was an overwhelming odor in the tub. He further testified that he observed two gallon-size Mason jars in the "tub." One of the jars contained a white powdery substance, and another contained a liquid substance. The tub also contained tubing and other instruments consistent with the manufacture of a controlled substance. Trooper Bennett also testified that the trunk was partially open when he stopped appellant's vehicle and that there were items in the trunk that kept it from latching properly. Trooper Bennett observed a large aluminum tank, black hosing, and two Igloo coolers that smelled of anhydrous ammonia in the trunk.

Sergeant Myles Trigo was the narcotics investigator for the Department of Public Safety, and he was in charge of the investigation after Trooper Bennett made the initial arrest. Sergeant Trigo testified that he gained entry to the mobile home which appellant had told Trooper Bennett that he owned. Sergeant Trigo testified that the mobile home was filthy. There were punctured cans of starter fluid which could be used in making methamphetamine; substances that could be used as cutting agents in preparing methamphetamine for sale; a "box of baggies which are used to package material"; ephedrine pills; syringes; empty lithium battery packages; and lithium batteries. Sergeant Trigo also observed propane tanks and fittings for the tanks that were a bright blue color. Sergeant Trigo testified that, when the brass fittings come into contact with anhydrous ammonia, one of the main ingredients used to manufacture methamphetamine, the fittings turn a bright blue color.

Eddie Dickie, a supervising criminalist for the Abilene Department of Public Safety Crime Laboratory, described the tests that were conducted on the liquid contents of a glass jar found in appellant's car. In his opinion, the contents of the glass jar was 450 grams of methamphetamine. Dickie further described the tests that were conducted on the powdery substance found in appellant's car. He testified that, as a result of his review of the reports and his knowledge of the procedures of the lab, the powdery substance was 59.3 grams of methamphetamine.

Appellant asserts five issues on appeal. In his first and second issues, appellant contends that the evidence was legally and factually insufficient to support his conviction of possession with intent to deliver. In his third issue, appellant also contends that the trial court erred in allowing expert testimony based on hearsay documents. Finally, appellant contends in his fourth and fifth issues that TEX. HEALTH & SAFETY CODE ANN. § 481.002(5) (Vernon 2003) violated the Equal Protection Clauses of the United States and Texas Constitutions,[1] resulting in the discriminatory application of the range of punishment.

---

**1.** U.S. CONST. amend. XIV; TEX. CONST.    art. I, § 3.

In order to determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard gives full effect to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State,* 17 S.W.3d 664 (Tex.Cr. App.2000). In order to determine if the evidence is factually sufficient, we must review all of the evidence in a neutral light and determine whether the evidence supporting guilt is so weak as to render the conviction clearly wrong and manifestly unjust or whether the evidence supporting guilt, although adequate when taken alone, is so greatly outweighed by the overwhelming weight of contrary evidence as to render the conviction clearly wrong and manifestly unjust. *Cain v. State,* 958 S.W.2d 404 (Tex.Cr.App.1997); *Clewis v. State,* 922 S.W.2d 126 (Tex.Cr.App.1996). We review the fact finder's weighing of the evidence and cannot substitute our judgment for that of the fact finder. *Cain v. State, supra; Clewis v. State, supra.* Due deference must be given to the jury's determination, particularly concerning the weight and credibility of the evidence. *Johnson v. State,* 23 S.W.3d 1 (Tex.Cr. App.2000); *Jones v. State,* 944 S.W.2d 642 (Tex.Cr.App.1996), *cert. den'd,* 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). The court has the authority to disagree with the fact finder's determination "only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Johnson v. State, supra at 9.* The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the

State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State,* 819 S.W.2d 839 (Tex.Cr.App.1991). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State, supra.*

The Texas Legislature amended the relevant statutes in 2001. These amendments were effective on September 1, 2001. Because this offense took place before the effective date of the 2001 changes, we will review this case under the statutes in effect at the time of the offense. Under former TEX. HEALTH & SAFETY CODE § 481.112 (2000) as it existed, the offense was defined as "a person commits an offense if the person knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group 1." Former Section 481.112(a). At that time, the term controlled substance was defined as follows:

[A] substance, including a drug, an adulterant, a dilutant, an immediate precursor, listed in Schedules I through V or Penalty Groups 1, 1–A, or 2 through 4. The term includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance.

Former TEX. HEALTH & SAFETY CODE § 481.002(5) (2000). If the amount of the controlled substance "by aggregate weight, including adulterants or dilutants, [is] 400 grams or more," the offense is punishable by confinement for life or confinement for not more than 99 years or less than 15 years. Former Section 481.112(f). At the time, as now, TEX. HEALTH & SAFETY CODE ANN. § 481.102 (Vernon 2003) included methamphetamine in Penalty Group 1.

Intent to deliver can be proven by circumstantial evidence. Inferences

can be made from the conduct of the defendant as well as the amount of the controlled substance possessed and the manner in which it was possessed. *Rhodes v. State,* 913 S.W.2d 242 (Tex.App.-Fort Worth 1995), *aff'd,* 945 S.W.2d 115 (Tex. Cr.App.), *cert. den'd,* 522 U.S. 894, 118 S.Ct. 236, 139 L.Ed.2d 167 (1997); *Puente v. State,* 888 S.W.2d 521 (Tex.App.-San Antonio 1994, no pet'n). Intent is a question of fact and must be determined by the trier of fact. With a record that can raise many conflicting inferences, we must defer to the trier of fact and assume that the trier of fact resolved any conflict in favor of the verdict in determining if the evidence is sufficient to show appellant's intent. *Matson v. State, supra.*

■ Here, the evidence clearly shows that appellant possessed more than 400 grams of methamphetamine. Appellant argues that the State did not prove that the substances found in appellant's vehicle were immediate precursors and, therefore, were not proven to be controlled substances. While immediate precursors were included in the definition of controlled substance, the statute further defined controlled substances as any *mixture or solution containing a controlled substance.* Dickie described the procedure used in analyzing the substances found in appellant's car, and he testified that the substances were methamphetamine. Sergeant Trigo testified that appellant's mobile home was used as a workplace not as a residence. Also, the items that Sergeant Trigo observed in the mobile home created an inference that appellant was going to sell the methamphetamine. The photographs of the cutting agent, Enfamil, other unidentified cutting agents in "baggies," and other "baggies" used to package material all support this inference. Sergeant Trigo further testified that:

A cutting agent, basically, is, once you get your finished product of powder-type of drug, you can mix certain types of powder with it to expand it so you have a lot more to sell. You make more money that way.

\* \* \*

There are a lot of items that we come across that are commonly used as cutting agents, that are commonly used by drug dealers, whether it's in manufacturing methamphetamine or other drugs, that are mixed together with their drugs to increase the amount of material that they have to sell.

Dickie testified that the methamphetamine found in appellant's vehicle, if it were diluted with cutting agents having a 25 percent purity, would yield 32 grams of street methamphetamine.

Here, the State produced evidence from Trooper Bennett who made the initial contact with appellant, Sergeant Trigo who led the investigation of appellant, and the expert opinion of Dickie as to the contents of the mixture seized. Appellant offered no evidence to contradict this testimony. Viewing the evidence in the light most favorable to the verdict, the evidence is not so weak as to render the verdict clearly wrong and unjust. A rational jury could have found that the State had proven every element of the offense beyond a reasonable doubt. The evidence is both legally and factually sufficient to support appellant's conviction. We overrule appellant's first and second issues on appeal.

■ In his third issue, appellant contends that it was error for the trial court to allow the testimony of Dickie because he did not perform the tests on the substances and, therefore, his testimony was based on hearsay documents.

The trial court, after a hearing outside the presence of the jury, found that Dickie was an expert and that his testimony was reliable, relevant, and helpful to the jury. Dickie testified that he did not perform the tests on the substances recovered from appellant's car. J.R. Burch, another DPS chemist, performed the tests under Dickie's supervision. Burch had since retired and could not be located to testify at trial. Dickie relied upon the following documents prepared by Burch: a worksheet, a submission form, and charts and graphs for each exhibit. Dickie referred to these documents throughout his testimony. However, these documents were neither offered into evidence nor made a part of the appellate record.

■ Dickie gave his opinion regarding Burch's results. An opinion by an expert is not hearsay. *Aguilar v. State*, 887 S.W.2d 27, 29 (Tex.Cr.App.1994), states:

> Yet it is clear under our rules of evidence that the present opinion of a testifying witness does not meet the definition of hearsay because it is not, and never can be, a statement "other than one made by the declarant while testifying at the trial or hearing." TEX. R.CRIM.EVID. 801(d). Even if the expert relies in whole or part upon information of which he has no personal knowledge, communicated to him at or before the time he testifies, the admissibility of his opinion is not affected "unless the court determines that he does not have a sufficient basis for his opinion."

Dickie, who was qualified as an expert, was free to offer his opinion based on his expertise and the documents prepared by Burch. *See Martinez v. State*, 22 S.W.3d 504, 508 (Tex.Cr.App.2000). We overrule appellant's third issue on appeal.

■ In his fourth and fifth issues, appellant contends that former Section 481.002(5) violated the Equal Protection Clauses of the United States and Texas Constitutions. Former Section 481.002(5) included "the aggregate weight of any mixture, solution, or other substance containing a controlled substance" in its definition of controlled substance.

■ The purpose of the Equal Protection Clauses of both the United States and Texas Constitutions is to prevent the government from discriminating against any person or class of persons. See U.S. CONST. amend. XIV; TEX. CONST. art. I, § 3. Unless a statute challenged on equal-protection grounds interferes with a fundamental right or discriminates against a suspect class, we review that statute using the rational-basis test. *Black v. State*, 26 S.W.3d 895 (Tex.Cr.App.2000). The rational-basis test provides that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Protection of the public health, safety, morals, or some other phase of the general welfare is a legitimate state interest. *Lawrence v. State*, 41 S.W.3d 349 (Tex.App.-Houston [14th Dist.] 2001, pet'n ref'd). As stated by the court in *Watts v. Mann*, 187 S.W.2d 917, 924 (Tex.Civ.App.-Austin 1945, pet'n ref'd):

> The Legislature may classify law violators and impose different penalties, inhibitions and restrictions upon the several classes, provided there is a reasonable basis for the classification. In determining whether there is a reasonable basis for the classification there is a general presumption that the Legislature has done its duty, not violated the Constitution; and therefore the classification will be upheld unless it appears, clearly and

without doubt, that it has no reasonable basis of support.

Appellant is not a member of a suspect class. Applying the rational-basis test to the definition of controlled substance in former Section 481.002(5), we determine that the State has a legitimate interest in protecting the public health, safety, and morals. Appellant has not overcome the general presumption that the State has not violated the United States or Texas Constitutions. Further, appellant was not treated differently than any other defendant found to be in possession of more than 400 grams of a controlled substance. We overrule appellant's fourth and fifth issues on appeal.

The judgment of the trial court is affirmed.