•           •           • 
 • • •




                                                                                                               MEMORANDUM OPINION

Nos. 04-09-00293-CR, 
           04-09-00294-CR, &
      04-09-00295-CR

William Allen PAULEA III,
Appellant

v.

The STATE of Texas,
Appellee

From the 198th Judicial District Court, Kimble County, Texas
Trial Court Nos. 08-1711, 08-1712, & 08-1713
Honorable Emil Karl Prohl, Judge Presiding
 
Opinion by:    Marialyn Barnard, Justice
 
Sitting:            Karen Angelini, Justice
Steven C. Hilbig, Justice, concurring in the judgment only
Marialyn Barnard, Justice

Delivered and Filed: March 24, 2010

AFFIRMED
            William Allen Paulea was found guilty of possession of cocaine, possession with intent to
deliver methamphetamine, and possession of child pornography. In nine appellate issues, Paulea
complains (1) the trial court erred in denying his motion to suppress, and (2) the evidence was legally
insufficient to sustain his conviction for possession with intent to deliver methamphetamine. We
affirm the trial court’s judgment. 
Background
            Police officers Slade Fisher and George Kirchman were dispatched to the Days Inn Hotel in
Junction, Texas after receiving a call from the hotel clerk regarding hotel guest, Clay Pratt, who was
reportedly engaging in lewd behavior in a second floor hotel hallway. Officer Fisher arrived first,
and thereafter, Officer Kirchman arrived. After finding Pratt in the hallway, the officers arrested
Pratt for public intoxication and disorderly conduct. After Pratt was placed under arrest, the hotel
clerk retrieved Pratt’s room key. The hotel clerk determined the key belonged to room 109, the room
was occupied by two adults, and registered to Paulea. The hotel clerk relayed this information to
Officer Fisher and expressed concern over Pratt’s actions and the damage done to the property. 
Officer Fisher went to room 109. 
            According to Officer Fisher, he knocked on the door, announced “Sheriff’s office,” and heard
movement inside the room. After knocking on the door again and announcing “Sheriff’s office,”
Paulea answered, opening the door about six inches. Officer Fisher identified himself, told Paulea
about Pratt’s arrest, and said he would like to talk to Paulea. Officer Fisher testified that when
Paulea stepped outside to talk with him, he smelled the odor of burnt marijuana, and saw through
the open door a glass bong and pipe on the bedside table between the two beds. Officer Fisher
placed Paulea in handcuffs, advising Paulea he was not under arrest, but was being detained. Officer
Fisher testified he placed Paulea in handcuffs for officer safety. 
            Officer Fisher said he then called Officer Kirchman, and while waiting for Officer Kirchman,
advised Paulea to sit in a chair outside room 109. Paulea remained in handcuffs. Thereafter, Chief
Steve Brown arrived and was advised of the situation. According to Chief Brown and Officer Fisher,
Paulea gave the officers permission to enter room 109 so the three of them could talk. The three men
entered the room. Chief Brown walked to the back of the room, checking for other occupants. He
commented that the room smelled like burnt marijuana. While the three men were in the room,
Chief Brown advised Paulea of his rights, including his Miranda rights, and asked for consent to
search the room. According to the officers, Paulea verbally consented to the search of the room. 
            Paulea testified he had been sleeping when he heard Officer Fisher knock on the door. When
he heard knocking, he woke up and cracked the door open to see who was there. Paulea testified that
after Officer Fisher told him to open the door, he closed the door to disengage the safety chain and
reopened the door. Paulea testified that after he opened the door, Officer Fisher asked him to step
aside, and Officer Fisher entered the room. According to Paulea, Officer Fisher used a flashlight to
look inside the room and after looking around the room, Officer Fisher instructed Paulea to step
outside, where he was placed in handcuffs. Shortly after he was placed in handcuffs and instructed
to sit in a chair in the hallway, Chief Brown arrived. Chief Brown and Officer Fisher then began to
search his room, including his luggage. 
            During the search, Officer Morgan arrived. The officers found an HP laptop computer inside
one of Paulea’s bags, a projector on top of the bed, and some external hard drives in another bag.
According to Chief Brown, he asked Paulea for consent to conduct a forensic examination of the
computer equipment, and Paulea stated “that’s fine.” Officer Morgan confirmed Paulea’s consent
to a search of the computer equipment. Paulea admitted giving Chief Brown permission to look at
his computer, but denied giving the officers permission to conduct a “preliminary” or “forensic”
search of his computer. Paulea admitted his computer had pornography on it, but denied the
presence of any child pornography. When Officer Morgan indicated he would have to examine the
evidence at the station, Paulea gave Officer Morgan the password to the computer. 
            After the search, Paulea was arrested for possession of drug paraphernalia. The officers
searched Paulea incident to his arrest, and in his pant pockets found an assortment of ziploc bags:
two clear ziploc bags containing a white crystalline substance, a purple ziploc bag containing a white
substance, a clear ziploc bag containing nine blue tablets, and a small ziploc bag with a spades
design containing a white powder residue. Paulea was then taken to jail, and the computer
equipment was taken to the Junction Police Department for examination. At the jail, Chief Brown
presented Paulea with a written consent form, which Paulea signed. The form authorized a search
of room 109 at the Days Inn Hotel, a search of a vehicle, and the removal of any seized property from
the room. The form, however, made no reference to a forensic examination of the computer. 
            Meanwhile, at the Junction Police Department, Officer Morgan began a preliminary
examination of the computer. The preliminary examination consisted of turning the computer on,
entering the password, and viewing documents and files. Officer Morgan found a folder with images
that appeared to be child pornography. He transferred the images from the computer onto a disc,
closed the computer, and marked the items as evidence. The computer evidence was then transferred
to the FBI for a forensic examination. The FBI transferred the computer evidence to North Texas
Regional Computer Forensic Laboratory, and subsequently, the computer evidence to the Attorney
General’s Office. Forensic examiner, Lieutenant Lannes Hilboldt, conducted a forensic examination
of the laptop’s hard drive and retrieved fifteen images alleged to contain child pornography. These
images were ultimately offered into evidence. 
            The officers also submitted the retrieved ziploc bags to the Austin lab of the Texas
Department of Safety. Drug analyst, Joel Budge, performed an analysis of each bag and found each
to contain the following controlled substances: .48 grams of cocaine (the white powder substance);
1.44 grams of methamphetamine (the white crystalline substance); .78 grams of methamphetamine
(the white crystalline substance); 2.62 grams of methamphetamine and 3.4
methylenedioxyamphetamine (the nine blue tablets); and a trace of cocaine (the white powder
substance). During trial, each bag was admitted into evidence. 
            Paulea was charged in cause number 08-1711 with possession of a controlled substance,
namely cocaine, in cause number 08-1712 with possession with intent to deliver a controlled
substance in an amount over four grams, namely methamphetamine, and cause number 08-1713 with
fifteen counts of child pornography. Paulea pled not guilty and filed a written motion to suppress,
challenging the legality of his detention and arrest, and seeking to suppress all evidence seized. The
trial court denied the motion, and the case proceeded to jury trial. The jury found Paulea guilty of
possession of cocaine and possession of child pornography. Paulea was also found guilty of the
lesser included offense of possession of methamphetamine with intent to deliver a controlled
substance in an amount of more than one gram but less than four grams. Punishment was assessed
at two years for cocaine possession and ten years each for possession of methamphetamine with
intent to distribute and possession of child pornography. This appeal followed. Standard of Review
            We review a trial court’s ruling on a motion to suppress under a bifurcated standard of
review. Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court’s ruling, we may not engage in
our own factual review; instead we defer to the trial judge, who is the sole trier of fact and judge of
the credibility of the witnesses and weight to be given to their testimony. Weide v. State, 214 S.W.3d
17, 24-25 (Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000),
modified on other grounds by State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006). The trial
court has the opportunity to observe the witnesses’ demeanor and appearance, and as a result, the
trial court is entitled to believe or disbelieve all or part of the witnesses’ testimony, even if the
testimony is uncontroverted. Ross, 32 S.W.3d at 855. Accordingly, we give a great deal of
deference to the trial court’s determination of historical facts; however, we review the trial court’s
application of the law to those facts de novo. Amador, 221 S.W.3d at 673. 
            Additionally, when reviewing a trial court’s ruling on a motion to suppress, we must view
all the evidence in the light most favorable to the trial court’s ruling. State v. Iduarte, 268 S.W.3d
544, 548 (Tex. Crim. App. 2008); State v. Kelly, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006). 
If the trial court makes explicit fact findings, we must determine whether the evidence supports those
findings by viewing that evidence in the light most favorable to the trial court’s ruling. Id. We then
review the trial court’s legal ruling de novo, and we will uphold the ruling so long as it is supported
by the record and correct under any theory of law applicable to the facts in the case. Iduarte, 268
S.W.3d at 548. 
Discussion
            In his first seven issues, Paulea contends the trial court erred in denying his motion to
suppress the evidence seized from his hotel room. Specifically, Paulea argues Officer Fisher did not
have reasonable suspicion or probable cause to lawfully detain or arrest him, and such actions were
in violation of the Fourth Amendment of the United States Constitution and Chapter 14 of the Texas
Code of Criminal Procedure. Paulea argues the officers conducted a warrantless search of his hotel
room, and any purported consent given to search the room was tainted by the alleged illegal,
warrantless detention and arrest. Moreover, he claims the trial court erred in finding he voluntarily
consented to the entry and search of his hotel room, or to the forensic search of his computer
equipment. Paulea contends that as a result of the officers’ warrantless detention, arrest, and search,
the trial court erred in denying his motion to suppress. 
Burden of Proof
            In order to properly suppress evidence based on an alleged Fourth Amendment violation, the
defendant bears the burden of producing evidence that rebuts the presumption of proper law
enforcement conduct. Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A defendant
sufficiently satisfies his burden if the search or seizure occurred without a warrant. Id. Once the
defendant satisfies his burden, the burden of proof shifts to the State, which is required to prove the
search or seizure was conducted either pursuant to a warrant or was reasonable. Id. Texas statutory
law is silent as to how the burden of proof is distributed in a hearing on a motion to suppress. See
Tex. Code. Crim. Pro. art. 28.01, § 1(6) (Vernon 2009); Pham v. State, 175 S.W.3d 767, 773 (Tex.
Crim. App. 2005).Texas adopts, at least in some respects, the rules followed by federal courts in the
distribution of burdens of proof. Pham, 175 S.W.3d at 773. 
            Here, neither the seizure of Paulea’s person nor the search of his hotel room and computer
equipment was conducted pursuant to a warrant.


 As a result, the State bore the burden of
establishing the reasonableness of the detention, arrest, and subsequent search. See Ford, 158
S.W.3d at 492; Pham, 175 S.W.3d at 773. 
            Accordingly, we examine in chronological order each aspect of Paulea’s 1) detention, 2)
arrest, and 3) subsequent search to determine if they were reasonable. 
1) Consensual Encounter Versus Detention
            Paulea argues Officer Fisher did not have reasonable suspicion to lawfully detain him outside
the hotel room. Specifically, Paulea argues the following events constituted an unlawful detention
when: 1) Officer Fisher knocked on the door and announced “Sheriff’s office;” 2) Paulea partially
opened the door; 3) Officer Fisher advised Paulea of the situation with Pratt and asked Paulea if he
could come outside to speak with him; and 4) Paulea responded, “Okay” and exited the room. Based
on these events, Paulea asserts Officer Fisher did not have reasonable suspicion to ask him to step
outside and speak with him. 
            Interactions between police officers and citizens fall within three categories: an encounter,
detention, or arrest. State v. Perez, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). Whether an officer
engages in an encounter or a detention requires us to review the following guidelines. An encounter
is a consensual interaction between a police officer and a citizen, in a public place, that does not
require reasonable suspicion or implicate constitutional rights. Perez, 85 S.W.3d at 819. A police
officer may approach a citizen and talk to him without any suspicion so long as the encounter is
consensual and not unreasonably lengthy. Id. Additionally, an officer may knock on a citizen’s
closed door without any suspicion and ask him if he is willing to answer questions. Id. Whether an
encounter constitutes a seizure for consideration of the Fourth Amendment depends on the specific
facts of the situation, the degree of police authority displayed, and all other surrounding
circumstances. State v. Garcia-Cantu, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008). “It is only
when an officer, ‘by means of physical force or show of authority, has in some way restrained the
liberty of a citizen,’” that a seizure occurs. Id. at 242. 
            An investigative detention is a type of seizure that occurs when an individual is encountered
by a police officer, yields to the officer’s display of authority, and is temporarily detained. Johnson
v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). A person yields to an officer’s display of
authority when a person would not feel free to leave and terminate the encounter. Id. at 234-35. 
An officer may conduct a lawful and temporary investigative detention when he has reasonable
suspicion to believe a person is violating the law. Ford, 158 S.W.3d at 492; Balentine v. State, 71
S.W.3d 763, 768 (Tex. Crim. App. 2002). “Reasonable suspicion exists if the officer has specific,
articulable facts that, when combined with rational inferences from those facts, would lead him to
reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal
activity.” Ford, 158 S.W.3d at 492. Reasonable suspicion operates under an objective standard and
disregards any subjective intent an officer may have had when making the stop; therefore, we look
solely to whether an objective basis for the stop exists. Id. In making our determination of whether
reasonable suspicion exists, we use a totality of the circumstances approach. Id. at 492-93. 
            In this case, the trial court made the following relevant factual findings to which we must
defer. See Amador, 221 S.W.3d at 673. After arresting Pratt and listening to the hotel clerk’s
concern regarding Pratt’s behavior, Officer Fisher “proceeded to Room 109 to check the health and
welfare of the other occupant in the room.” Officer Fisher knocked on the door, stating “Sheriff’s
office,” and after hearing movement inside the room, he knocked again. Paulea answered, and
Officer Fisher informed Paulea of the situation with Pratt and asked Paulea to step outside. Paulea
replied. “Okay.” As Paulea exited the room, Officer Fisher “smelled the odor of burnt marijuana
while standing outside the door on the sidewalk in front of Room 109” and “clearly observed a
‘bong’ and [‘]silver metal pipe’ in ‘plain view’ on the bedside table, which was immediately known
to him as a device used to smoke some type of illegal substance.” Officer Fisher then advised Paulea
he was being detained for investigative purposes and was not under arrest. Thereafter, Officer Fisher
handcuffed Paulea and waited until Chief Brown arrived to the scene. The record supports these
factual findings, and therefore, we must defer to these facts in our analysis. See Iduarte, 268 S.W.3d
at 548; Amador, 221 S.W.3d at 673; Kelly, 204 S.W.3d at 818-19. 
            After reviewing these facts using a totality of the circumstances approach, we hold the
activity before Paulea was placed in handcuffs was a consensual encounter. See State v. Garcia-Cantu, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008) (indicating officers are free to approach and
knock on citizens’ doors and ask to talk with them and such conduct does not elevate to status of a
seizure until officer engages in threatening or coercive behavior). Here, Officer Fisher could freely
knock on Paulea’s hotel room door and ask to talk to him. See id. at 243; Capuchino v. State, 389
S.W.2d 296, 298 (Tex. Crim. App. 1965) (highlighting that officer may knock on door to hotel room
just as he may knock on front door of private home without implicating Fourth Amendment); Bouyer
v. State, 264 S.W.3d 265, 270 (Tex. Crim. App.—San Antonio 2008, no pet.) (pointing out it was
defendant’s choice to open door, allowing officers to observe items in plain view). We do not agree
with Paulea that asking a person to exit his or her hotel room to talk amounts to “conduct which a
reasonable man would view as threatening or offensive.” See Garcia-Cantu, 253 S.W.3d at 243. 
Nothing in the record indicates Officer Fisher’s actions up to this point amounted to the use of
physical force or a show of authority that restrained Paulea from leaving. See id. at 242. In fact, an
officer may knock and stand outside a person’s door without violating constitutional prohibitions,
and it is that person’s choice to open the door and comply with an officer’s requests. See Bouyer,
264 S.W.3d at 717 (highlighting it was defendant’s choice to open door to speak with officers). 
Accordingly, this interaction did not constitute an unlawful detention. 
            It was not until Officer Fisher, after smelling burnt marijuana and seeing the drug
paraphernalia in the room, placed Paulea in handcuffs and advised Paulea he was being detained that
Paulea was being kept against his will, and therefore detained for Fourth Amendment purposes. See
Garcia-Cantu, 253 S.W.3d at 242-43. After viewing the facts surrounding Paulea’s detention under
a totality of the circumstances approach, we hold Officer Fisher had reasonable suspicion to detain
Paulea. Although Paulea argues Officer Fisher did not have reasonable suspicion to detain him,
Officer Fisher relayed to the trial court specific, articulable facts, such as finding Pratt masturbating
and defecating on the floor, believing Pratt was staying in room 109, talking to Paulea about Pratt’s
situation outside the door on the sidewalk, smelling burnt marijuana while standing outside Paulea’s
hotel door, and clearly observing through the opened door drug paraphernalia on the bedside table
to indicate he had reasonable suspicion. See Taylor v. State, 20 S.W.3d 51, 56 (Tex.
App.—Texarkana 2000, pet. ref’d) (explaining odor of marijuana alone provides reasonable
suspicion to justify continuing detention); Mohmed v. State, 977 S.W.2d 624, 628 (Tex. App.—Fort
Worth 1998, pet. ref’d) (holding smell of marijuana creates reasonable suspicion for officer to
continue detention for investigation of drug possession). We agree with the State. Here, Officer
Fisher testified these facts led him to believe Paulea was using marijuana. Therefore, Officer Fisher
had reasonable suspicion to detain Paulea. 
2) Detention Versus Arrest
            Paulea also contends the initial detention turned into an illegal arrest in violation of the
Fourth Amendment of the United States Constitution and Chapter 14 of the Texas Code of Criminal
Procedure when Officer Fisher placed him in handcuffs outside the hotel room. Paulea argues he
was under arrest because a reasonable person would not have believed he was free to leave after
being asked to exit his hotel room, handcuffed, and later Mirandized.


 Paulea argues the State failed
to demonstrate probable cause existed for his warrantless arrest.
            As mentioned above, an officer may briefly detain a person reasonably suspected of criminal
activity in the absence of probable cause to arrest that person. Ford, 158 S.W.3d at 492; Balentine,
71 S.W.3d at 763. In contrast to such an investigative detention, an arrest is a greater restraint on
a person’s freedom to move or leave. State v. Sheppard, 271 S.W.3d 281, 290 (Tex. Crim. App.
2008). To make a warrantless arrest for an offense committed in the officer’s presence under the
Fourth Amendment, an officer must have probable cause. Amador v. State, 275 S.W.3d 872, 878
(Tex. Crim. App. 2009). Probable cause exists when the facts and circumstances of which an officer
has personal knowledge or of which he has reasonably trustworthy information are sufficient to
warrant a person of reasonable caution to believe that an offense was or is being committed. Id. 
            In Texas, a person may be arrested without a warrant if there is probable cause and the arrest
falls within one of the specified provisions of one of the statutes authorizing a warrantless arrest. 
Buchanan v. State, 207 S.W.3d 772, 775-76 (Tex. Crim. App. 2006) (highlighting neither Fourth
Amendment nor Texas Constitution requires a warrant to justify a public arrest); Johnson v. State,
32 S.W.3d 294, 298 (Tex. App.—San Antonio 2000, pet. ref’d). In Texas, the requirement for an
arrest warrant is purely statutory and governed by Chapter 14 of the Texas Code of Criminal
Procedure. Buchanan, 207 S.W.3d at 775-76. Article 14.01(b) of chapter 14 of the Code of
Criminal Procedure permits an officer to arrest an individual for an offense committed in his
presence or within his view. Tex. Code. Crim. Pro. Ann. art. 14.01(b) (Vernon 2009); Johnson,
32. S.W.3d at 298. Whether probable cause for making a warrantless arrest pursuant to article
14.01(b) exists depends on whether, at the time of the arrest, the facts and circumstances within the
arresting officer’s knowledge, and of which he had reasonably trustworthy information, were
sufficient to warrant a prudent man to believe the suspect had committed or was committing an
offense. Johnson, 32. S.W.3d at 298. 
            The use of handcuffs does not necessarily constitute an arrest or custody. Rhodes v. State,
945 S.W.2d 115, 117-18 (Tex. Crim. App. 1997). Although “[t]here is no bright-line test providing
that mere handcuffing is always the equivalent of an arrest[,]” officers may use any force necessary
to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety. See
Balentine, 71 S.W.3d at 763; Rhodes, 945 S.W.2d at 117. Whether a case involves a detention or
an arrest depends on several factors, including:
. . . the amount of force displayed, the duration of a detention, the efficiency of the
investigative process and whether it is conducted at the original location or the
person is transported to another location, the officer’s expressed intent - that is,
whether he told the detained person that he was under arrest or was being detained
only for a temporary investigation, and any other relevant factors. 
 
Sheppard, 271 S.W.3d at 291. 
            Here, in addition to the above mentioned factual findings, the trial court made the following
relevant factual findings to which we defer. See Amador, 221 S.W.3d at 673. Handcuffed, Paulea
remained with Officer Fisher outside the hotel room until Chief Brown arrived. When Chief Brown
arrived, the three men went into the hotel room, where Chief Brown told Paulea he could smell burnt
marijuana and see drug paraphernalia on the bedside table. After conducting a search for narcotics,



Chief Brown ordered Officer Kirchman to arrest Paulea for possession of drug paraphernalia. 
            After reviewing these facts, the investigative stop did not evolve into an arrest until Chief
Brown informed Paulea that he was being arrested for possession of drug paraphernalia. We do not
agree with Paulea that the officers’ earlier actions, including handcuffing and Mirandizing him,
turned his detention into an arrest because such actions were necessary to effectuate the goal of the
detention and subsequent search for narcotics. See Balentine, 713 S.W.3d at 763; Rhodes, 945
S.W.2d at 117. Here, the record reflects Paulea was handcuffed after Officer Fisher saw drug
paraphernalia on Paulea’s bedside table. Officer Fisher testified Paulea’s handcuffed detention was
for officer safety. Additionally, the trial court found Paulea “remained in handcuffs to prevent his
tampering with any potential evidence of the violation that had been observed.” These safety
concerns were reasonable, given the circumstances: 
•          Officer Fisher arrested Pratt for bizarre behavior; 
•          Pratt was believed to be staying with Paulea in room 109; 
•          Officer Fisher expressed concern for the health and welfare of Paulea’s
condition; 
•          Officer Fisher saw a “bong” and “silver metal pipe,” which based on his
training and experience immediately knew to be drug paraphernalia, on the
bedside table when Paulea opened the door; 
•          Officer Fisher informed Paulea of this observation as well as the smell of
burnt marijuana; and. 
•          Officer Fisher advised Paulea that he was only being detained and not under
arrest, and while alone together, the two men waited in the hallway for other
officers to arrive on the scene. 
 
            Similarly, Chief Brown advised Paulea he was not being arrested, and went on to advise
Paulea of his Miranda rights,


 his right to consent to a search of the room, as well as his right not to
consent to a search of the room. The three men remained in the hotel room with Paulea seated in
a chair, and as soon as the officers realized they would need to take the computer equipment back
to the station, they informed Paulea he was being arrested for possession of drug paraphernalia. This
is when the arrest occurred, and at that time, there was probable cause for the arrest given Paulea’s
possession of drug paraphernalia within the officers’ view. See Amador, 275 S.W.3d 878 ; Ramirez
v. State, 105 S.W.3d 730, 740 (Tex. App.—Austin 2003, no pet.) (pointing out officer had probable
cause to arrest defendant, who was already handcuffed and advised he was being detained, when
officer told defendant he could see drugs and drug paraphernalia); Waugh v. State, 51 S.W.3d 714,
717 (Tex. App.—Eastland 2001, no pet.) (highlighting probable cause existed where officers, who
based on their experience and training, relayed they saw drug paraphernalia, specifically a bong,
through open door); Johnson, 32. S.W.3d at 298. 
            Accordingly, Officer Fisher and Chief Brown’s investigative detention did not evolve into
an arrest, as Paulea contends, simply because Paulea was asked to exit his hotel room and
subsequently handcuffed after Officer Fisher saw what he believed to be drug paraphernalia in the
hotel room. Officer Fisher and Chief Brown did only that which was reasonably necessary to ensure
their own safety while investigating Paulea’s possible involvement with Pratt’s activities. See
Balentine, 71 S.W.3d at 763; Rhodes, 945 S.W.2d at 117. 
3) Consent to Search and Whether Such Consent was Tainted
            Paulea next contends that as a result of the warrantless detention and arrest, any purported
consent to enter and search his hotel room was tainted. Paulea argues his consent to enter and search
the hotel room were an exploitation of Officer Fisher’s unlawful detention and arrest. Paulea also
challenges the voluntariness of the verbal consent to enter and search his hotel room and the forensic
search of his computer. He argues the trial court committed reversible error in finding he voluntarily
consented. Because these issues are closely related, we will discuss them together in chronological
order, beginning with our conclusion that Paulea’s consent to enter and consent to search his hotel
was freely and voluntarily given.
            Consent to search is an exception to the warrant requirement of the Fourth Amendment. 
Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Carmouche v. State, 10 S.W.3d 323, 331
(Tex. Crim. App. 2000); State v. Ibarra, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997). For consent
to be valid, it must be voluntarily given, and whether consent is given voluntarily is a question of
fact considered by the totality of the circumstances. Carmouche, 10 S.W.3d at 331. The State bears
the burden of proof to show by clear and convincing evidence that consent was freely given. Ibarra,
953 S.W.2d at 245. The following factors are considered to determine voluntariness: the accused’s
youth, education, intelligence; whether the accused received constitutional advice; the length of the
detention; the repetitiveness of the officers’ questioning; and the use of physical punishment. Reasor
v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). 
            In this case, the trial court could have reasonably found that Paulea voluntarily consented to
the officers’ entry and search of his hotel room. The trial court made the following findings of fact: •          When Chief Brown asked Paulea if he and Officer Fisher could enter his
room with him and continue the conversation, Paulea stated, “Sure.” 
•          After telling Paulea he could smell burnt marijuana, Chief Brown asked
Paulea if he could search the room for narcotics. 
•          Chief Brown advised Paulea “that he did not have consent to the search of the
room, but that he was requesting consent to search the hotel room for
narcotics or drugs of any kind.” 
•          Chief Brown “advised [Paulea] that he had certain rights and proceeded to
Mirandize [] Paulea.” 
•          Paulea responded, “That’s fine, go ahead and search.” 
 
The record supports these factual findings. 
            Although Paulea was placed in handcuffs after Officer Fisher observed drug paraphernalia
in his room, the detention was brief; there was no repetitiveness in questioning by either Officer
Fisher or Chief Brown; the officers informed Paulea of his right to refuse to consent to search, and
there was no use of physical punishment. There is no evidence Paulea’s will was overborne to such
an extent that he felt coerced by the situation to consent to the entry and search of his room. 
Accordingly, looking at the totality of the circumstances, we hold the record supports a finding by
clear and convincing evidence that Paulea’s verbal consent was voluntary. See Ibarra, 953 S.W.2d
at 245. Therefore, the trial court did not err in entering a finding Paulea voluntarily consented to the
entry and search of his hotel room. 
            Next, given that we have concluded Paulea’s detention and subsequent arrest were lawful,
Paulea’s argument that his illegal warrantless detention and arrest tainted his purported consent is
baseless. Accordingly, Paulea’s consent to enter and search his room was not an exploitation of an
unlawful detention or arrest by Officer Fisher. 
            Lastly, after the officers observed the computer equipment and projector pointed toward the
wall as if to project an image in the room, Chief Brown asked Paulea if there was any illegal
pornography on the computer. Although Paulea did not directly answer the question, he admitted
the computer contained pornography. The factual findings also establish that “Chief Brown advised
[] Paulea that he had a Constitutional right not to have a search made of the computer and related
media without a search warrant,” and that “he could revoke his consent at any time once given.” 
Chief Brown asked for permission to search the computer, and Officer Morgan informed Paulea
“that it would take a while for a forensic examination of the computer and hard drives and it would
have to go back to the police station and then possibly be sent to a computer lab.” Paulea then
agreed to the forensic search and even gave the officers his computer password. Paulea was then
arrested for possession of drug paraphernalia and transferred to the jail, where he signed a written
consent form to search his hotel room and vehicle. 
            Again, the record supports the trial court’s factual findings, and after giving deference to
those findings and viewing the evidence in the light most favorable to the trial court’s ruling, we
conclude the trial court could have reasonably found by clear and convincing evidence that Paulea
voluntarily consented to the forensic search of his computer equipment. See Iduarte, 268 S.W.3d
at 548; Kelly, 204 S.W.3d at 818-19; Ibarra, 953 S.W.2d at 245. Paulea was informed of his rights
to consent or not to consent to a search of his computer; the officers explained that a forensic search
would require the computer equipment to be transferred to the police station and sent to a computer
lab; there was no repetitiveness in questioning by the officers; and there was no use of physical
punishment. And although Paulea contends the written form did not specifically consent to a
forensic search of the computer equipment, based on the officers’ request to search the computer
equipment and explanations of the forensic search to Paulea while at the hotel, the trial court could
have reasonably found by clear and convincing evidence that Paulea voluntarily consented to the
forensic search before his arrest and before he was transported to jail. Therefore, the trial court did
not err in entering a finding Paulea voluntarily consented to the forensic search of his computer
equipment.
            Accordingly, we hold the trial court did not err in denying Paulea’s motion to suppress, and
overrule Paulea’s first seven issues. 
Legal Sufficiency
            Paulea next argues the evidence was legally insufficient to sustain his conviction for
possession with intent to deliver methamphetamine. Not attacking the sufficiency of the evidence
to show his possession of various drugs, Paulea challenges the sufficiency of the State’s evidence
to show he possessed methamphetamine with an intent to distribute or deliver the drugs to another
person. According to Paulea, no rational trier of fact could have found beyond a reasonable doubt
that he possessed methamphetamine with an intent to deliver. 
            In deciding whether the evidence is legally sufficient to support a conviction of possession
with intent to deliver, we “must assess all the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could find the essential elements of the crime beyond a
reasonable doubt.” See Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); Jackson
v. Virginia, 443 U.S. 307, 319 (1979). We give deference to the trier of fact to “fairly resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts
to ultimate facts.” Jackson, 443 U.S. at 319. We may also give careful consideration to all the
evidence admitted, whether proper or improper, as well as direct or circumstantial. Guevara v. State,
152 S.W.3d 45, 49 (Tex. Crim. App. 2004); Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App.
2001). As the sole judge of the witnesses’ credibility and weight to be given to the evidence, the jury
is free to accept or reject any or all the evidence presented by either side. Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000). 
            A person commits the offense of possession with intent to deliver methamphetamine if he
knowingly or intentionally possessed methamphetamine of at least one gram but less than four grams
with the intent to deliver it. See Tex. Health & Safety Code Ann. § 481.112(a) (Vernon Supp.
2009); Moreno v. State, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref’d);
Nhem v. State, 129 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.). “In a
possession with intent to deliver case, the State must prove that the defendant: (1) exercised care,
custody, control, or management over the controlled substance; (2) intended to deliver the controlled
substance to another; and (3) knew that the substance in his possession was a controlled substance.” 
 Nehm, 129 S.W.3d at 699 (citing Tex. Health & Safety Code Ann. §§ 481.002(38), 481.112(a);
King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1993); Roberson v. State, 80 S.W.3d 730, 734-35 (Tex. App.—Houston [1st. Dist.] 2002, pet. ref’d)). Intent to deliver may be established by expert
testimony, such as testimony from experienced law enforcement, and circumstantial evidence, such
as evidence of an accused’s possession of the contraband. Moreno, 195 S.W.3d at 325; Ingram v.
State, 124 S.W.3d 672, 675-76 (Tex. App.—Eastland 2003, no pet.). “Inferences can be made from
the conduct of the defendant as well as the amount of the controlled substance possessed and the
manner in which it was possessed.” Ingram, 124 S.W.3d at 675-76. Other circumstantial factors
which may establish intent include: “(1) the nature of the location at which the accused was arrested;
(2) the quantity of contraband in the accused’s possession; (3) the manner of packaging; (4) the
presence or lack thereof of drug paraphernalia (for either use or sale); (5) the accused’s possession
of large amounts of cash; and (6) the accused’s status as a drug user.” Moreno, 195 S.W.3d at 325-26; Erskine v. State, 191 S.W.3d 374, 380 (Tex. App.—Waco 2006, no pet.). And although the
number of factors present are important to consider, the logical force the factors have in proving the
elements of the offense is more important. Moreno, 195 S.W.3d at 326. Lastly, intent is a question
of fact determined by the trier of fact. Ingram, 124 S.W.3d at 676. 
            When viewed in the light most favorable to the verdict, the evidence was legally sufficient
to support Paulea’s conviction of possession with intent to deliver a controlled substance, namely
methamphetamine, in an amount greater than one gram but less than four grams. It appears the State
based the possession of more than four grams of methamphetamine with intent to deliver charge on
the facts that Paulea was in possession of various amounts of methamphetamine in different ziploc
bags as well as in possession of ecstacy tablets, which he distributed to Pratt. The evidence shows
Paulea was in possession of two ziploc bags, with one bag containing 1.44 grams of
methamphetamine and a second bag containing .78 grams of methamphetamine. The evidence also
shows Paulea was in possession of a third ziploc bag, which contained nine blue tablets. The blue
tablets consisted of 2.62 grams of methamphetamine and 3.4 methylenedioxyamphetamine. The
State presented testimony from Joel Budge, a drug analyst for the Texas Department of Public
Safety, who testified methylenedioxyamphetamine, one of the substances found in the blue tablets,
is commonly known on the street as ecstacy, and ecstacy is commonly marketed on the street in
tablet form. Pratt testified he knew Paulea carried ecstasy tablets, and Paulea gave him half a tablet
on their way to the hotel, and Paulea gave him another whole tablet after they arrived. 
            Accordingly, a review of the evidence clearly shows Paulea had custody, control, and
management over the various bags of methamphetamine; Paulea possessed the controlled substance
in marketable form; and Paulea was aware he was in possession of the controlled substances. See
Nehm, 129 S.W.3d at 699. Moreover, based on the several bags and tablet form in which Paulea
kept methamphetamine, as well as the amount of the methamphetamine Paulea possessed, the jury
could make a reasonable inference that Paulea possessed the methamphetamine with an intent to
deliver. See Ingram, 124 S.W.3d at 675-76. 
            Although the State charged Paulea with possession with intent to distribute a controlled
substance, namely methamphetamine, in excess of four grams, the jury rejected the charge in the
indictment, and instead found Paulea guilty of the lesser offense of possession with intent to
distribute methamphetamine in an amount of more than one gram but less than four grams. Here,
as the sole judge of the witnesses’ credibility and weight to be given to the evidence, the jury was
free to accept or reject any or all the evidence presented by either side, and could reasonably
conclude Paulea was in possession of more than one gram but less than four grams of
methamphetamine with an intent to distribute. See Wesbrook, 29 S.W.3d at 111. Therefore, after
viewing the evidence in the light most favorable to the verdict and determining a rational trier of fact
could have reasonably believed beyond a reasonable doubt that Paulea possessed methamphetamine
with an intent to distribute, we hold the evidence is legally sufficient to support Paulea’s conviction
for possession with intent to deliver methamphetamine in an amount in excess of one gram but less
than four grams. See Poindexter, 153 S.W.3d at 405; Jackson, 443 U.S. at 319. Accordingly, we
overrule Paulea’s last issue on appeal. 
Conclusion
            Based on the forgoing, we affirm the trial court’s judgment. 
Marialyn Barnard, Justice
DO NOT PUBLISH