**Opinion filed August 9, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00280-CR

_____

## ODIS RAY WILLIS, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 23932A**

### M E M O R A N D U M   O P I N I O N

Odis Ray Willis, appellant, was charged with two counts of possession of four grams or more, but less than two hundred grams, of cocaine. The first count alleged possession with intent to deliver, but the second count alleged possession only. Both counts were enhanced with a prior conviction of appellant for possession of cocaine with intent to deliver. The jury found appellant guilty of possession of cocaine with intent to deliver as alleged in count one. Appellant pleaded "true" to the enhancement paragraph, and the trial court assessed punishment at fifteen years confinement.

This is a joint possession case. Appellant's passenger had previously pleaded guilty and stipulated that she possessed the cocaine with the intent to distribute it. Appellant presents two

points of error: (1) the evidence is insufficient to prove that appellant intentionally possessed cocaine in an amount of four grams or more but less than two hundred grams and (2) the evidence is insufficient to prove that appellant possessed cocaine with the intent to distribute it. We affirm.

*Background Facts*

John R. Wilson, a detective with the Abilene Police Department, was a patrol officer at the time. Shortly after midnight, he was turning left and noticed appellant in an SUV beside him. Although Officer Wilson had a green turn signal, the light was still red for appellant; however, when Officer Wilson turned, appellant went straight ahead through the red light. Officer Wilson turned on his lights and siren and pulled appellant over within two blocks. Because of the time of night and because appellant's vehicle had very dark tinted windows, Officer Wilson called for backup. Officer Aron Bryan arrived within minutes.

When Officer Wilson asked appellant how many people were in the vehicle, appellant told him that he only had a female passenger. Officer Wilson ran a search of appellant's license for validity and a criminal history. Based on that search, Officer Wilson called for a canine unit. Officer Thomas Peavy, a canine officer, arrived within eight minutes of the stop. Officer Katy Shriver was with Officer Peavy. Officer Wilson then prepared for the dog to do a "free air sniff" where the dog is taken to the vehicle in question. The first step was to remove the occupants of the vehicle for their protection.

Officer Wilson approached the driver's side, and Officers Bryan and Shriver approached the passenger's side. Officer Wilson had appellant step out of the SUV and go to the front of his patrol car. Officer Wilson was standing next to appellant when the other two officers opened the passenger door for Mary Minor to get out. As Minor stepped out of the SUV, a clear plastic bag with 6.08 grams of cocaine fell out of her lap onto the ground. Officer Wilson testified that appellant had a direct view of the passenger door, that appellant was watching that area when Minor stepped out and cocaine fell to the ground, and that appellant's demeanor changed when it fell. According to Officer Wilson, appellant's reaction was to slump his shoulders as "a child does when they get into trouble by doing something bad." Officer Wilson demonstrated appellant's reaction to the jury and subsequently described appellant's reaction as being "upset at the fact that drugs were found." Officer Bryan picked up the cocaine and gave it to

2

Officer Wilson. Both appellant and Minor were arrested. Officer Wilson weighed the amount and did a field test to confirm that it was cocaine.

Officers Bryan and Shriver confirmed that, when they opened the passenger door, the baggie with cocaine was easily seen in Minor's lap and that, when she stood up, the cocaine fell from her lap. Officer Shriver added that anyone in the vehicle would have been able to see the drugs in Minor's lap.

Officer Peavy, the canine officer, had been with the Abilene Police Department for twelve years. Officer Peavy testified that he works as security for pool halls and pool tournaments. He also plays pool during his leisure time. Officer Peavy had seen appellant playing pool a number of times at Rack Daddy's, a billiards hall. In performing an inventory search of appellant's SUV, Officer Peavy recognized some pool cues that were worth a lot more money "than the average K-Mart brand." He noted that three of the pool cues were custom made and recognized that one was quite expensive. Officer Wilson described the pool cues as being the length and weight that a man would use to play pool. Officer Peavy described the pool cues as being the type that no one would leave in the back of his car. Appellant told Officer Wilson that he was buying the SUV; he had taken over the payments on the SUV from a friend who was in jail. In his brief, appellant admits that he was buying the SUV.

Officer Peavy found additional cocaine in the top zipper pocket of a pool cue bag where chalk and other accessories are kept. He took that cocaine to Officer Wilson. The officers found no feminine articles in the vehicle. The officers found no needles, syringes, or items that are used to smoke or inject cocaine. There also were no articles, such as razor blades or scales, in the SUV that are commonly associated with the distribution of drugs. Appellant had $200 to $300 in cash, but Minor had no money with her.

In stating why the officers had not taken fingerprints off the large baggie of cocaine, Officer Wilson replied that there was no need to because appellant was the driver, appellant owned the car, appellant knew what was in the car, and the officers found crack cocaine in a pool cue bag that matched the cocaine in the larger baggie. Although he first stated that the match was found in the lab, he subsequently admitted that he was not at the lab when they tested the cocaine and that he personally had no evidence that matched the two amounts of cocaine. Officer Wilson expressed his opinion that the crack cocaine that fell from Minor's lap was the largest amount of crack cocaine that he had seen in Abilene and that normally a person caught

3

with cocaine after a traffic violation will not have that much crack cocaine. He also testified that the value of the 6.08 grams of cocaine was $600.

The State's expert testified that the cocaine from the pool cue bag weighed 0.02 grams and was in the form that could be smoked and that the baggie that fell out of Minor's lap contained 6.08 grams of cocaine.

*Sufficiency of the Evidence Standard of Review*

We review a sufficiency of the evidence issue, regardless of whether denominated as a legal or a factual sufficiency claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); and *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

In a prosecution for possession of a controlled substance, the State must prove that the accused exercised care, custody, control, or management over the substance and that the accused knew the substance was contraband. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West 2010); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988). The State does not have to prove that the accused had exclusive possession of the contraband; joint possession is sufficient to sustain a conviction. *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986).

When the accused is not shown to have had exclusive possession of the place where the contraband was found, the evidence must link the accused to the contraband and establish that the accused's connection with the drug was more than fortuitous. *Evans*, 202 S.W.3d at 161–62; *Pollan v. State*, 612 S.W.2d 594, 596 (Tex. Crim. App. 1981). Courts have recognized a number of factors that may link an accused to the drug. *Evans*, 202 S.W.3d at 162 n.12. The legal issue with respect to such "links" is "whether there was evidence of circumstances, in addition to mere presence, that would adequately justify the conclusion that the defendant knowingly possessed the substance." *Evans*, 202 S.W.3d at 161–62 & n.9. No set formula exists to dictate a finding of links sufficient to support an inference of knowing possession of contraband. *Isbell v. State*, 246 S.W.3d 235, 238 (Tex. App.—Eastland 2007, no pet.); *Taylor v. State*, 106 S.W.3d 827, 831

4

(Tex. App.—Dallas 2003, no pet.). It is not the number of links that is dispositive but, rather, the logical force of all the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162.

*Analysis*

The evidence linked appellant to the cocaine that fell from Minor's lap. Viewing the evidence in the light most favorable to the verdict, there was evidence to support six of the links listed in *Evans*: (1) appellant was present when the cocaine fell from Minor's lap; (2) the cocaine was in plain view on her lap; (3) in the driver's seat, appellant was very near the cocaine and easily could have reached it (or tossed it into her lap); (4) when arrested, appellant possessed other cocaine that was found in his pool cue bag; (5) appellant's demeanor and actions when the cocaine fell to the ground were incriminating; and (6) appellant claimed ownership and possession of the SUV.

Appellant argues that he was at some distance from the SUV when the cocaine was found. Appellant was in front of Officer Wilson's patrol car that was just behind appellant's SUV. He was in the SUV minutes before Minor was taken from the SUV. The State's theory that appellant, before leaving the SUV, tossed the cocaine into Minor's lap was not an unreasonable inference. In the video, appellant was first standing by his door while Officer Wilson ran the license check; however, he got back into the SUV after a few minutes. According to the video, there was ample time for appellant to take the cocaine out of his pocket and place it in Minor's lap while Officer Wilson was in the patrol car. During that time, the passenger door was closed. Both Officer Bryan and Officer Shriver testified that Minor never touched the cocaine in her lap while they were watching her, which apparently was after they opened the passenger door. In the video, appellant had his back to the camera, and Officer Wilson was to the left of appellant. Officer Wilson was in a position to view appellant's face and body demeanor, and the video does confirm that appellant was watching to see Minor get out of the SUV.

The fact that the cocaine in the pool cue bag was ready to smoke indicates appellant's relationship to cocaine. Officer Peavy testified that the pool cues were expensive and that appellant's friend in jail would not have left them in the SUV when he sold it to appellant. The most reasonable inference is that the pool cues belonged to appellant, especially when Officer Peavy's testimony is considered.

5

There were 6.08 grams of crack cocaine in Minor's lap. According to Officer Wilson, the average street value of a gram of crack cocaine is $100. Thus, the value of the crack cocaine that fell from Minor's lap was about $600. Inferences of intent to deliver can be proven by the amount of the controlled substance and the manner in which it was possessed. *Ingram v. State*, 124 S.W.3d 672, 675–76 (Tex. App.—Eastland 2003, no pet.). Inferences from the location of arrest, quantity of the controlled substance possessed, manner of packaging, large amount of cash, and defendant's status as a drug user may be used to determine intent. *Williams v. State*, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Intent to deliver may be inferred from the amount possessed, especially if it is more than an ordinary user would have for personal consumption. *See United States v. Pineda-Ortuno*, 952 F.2d 98, 102 (5th Cir. 1992); *Taylor*, 106 S.W.3d at 831–32 (holding that 1.3 grams was consistent with thirteen individual uses and an intent to deliver in view of plastic bags); *Mack v. State*, 859 S.W.2d 526, 527–29 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (holding that twenty-nine rocks of crack cocaine in defendant's possession sufficient to show intent to deliver because this amount was not normal for personal consumption). Officer Wilson testified that the 6.08 grams was not normal for personal consumption. There was a large amount of cocaine in the baggie, and there was no drug paraphernalia in the SUV that would indicate that appellant had that cocaine for personal use.

After considering all of the evidence in the light most favorable to the verdict and reasonable inferences from it, we find that any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Appellant's points of error are overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.

TERRY McCALL

August, 9, 2012                                                JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

6